## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

N.S. o/b/o W.F.,

                Plaintiff,              Case No. 1:23-cv-00448

v.                                Hon. Paul L. Maloney

STURGIS PUBLIC SCHOOLS,

                Defendant.      **PLAINTIFF'S OPPOSITION TO**
                                       **MOTION FOR SUMMARY JUDGMENT**

---

Elizabeth K. Abdnour (P78203)
Jacquelyn Kmetz (P83575)
Renee A. Stromski (OH: 0101347)
ABDNOUR WEIKER LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
P: (517) 994-1776
F: (614) 417-5081
liz@education-rights.com
jacquelyn@education-rights.com
renee@awlawohio.com

*Attorneys for Plaintiff*

Timothy J. Mullins (P28021)
Kenneth B. Chapie (P66148)
Lindsay P. Hazen (P85861)
GIARMARCO, MULLINS & HORTON, P.C.
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
kchapie@gmhlaw.com
lhazen@gmhlaw.com

*Attorneys for Defendant*

---

## PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................... **3**

**STATEMENT OF FACTS**..................................................................................................... **4**

**STANDARD OF REVIEW** ................................................................................................. **11**

    **I.    IDEA APPEAL**.................................................................................................. 11

    **II.    REMAINING CLAIMS** ................................................................................. 12

**ARGUMENT**.......................................................................................................................... **13**

    **I.    DEFENDANT FAILED TO COMPLY WITH LCɪᴠR. 7.1, FED. R. CIV. P. 7, AND FED. R. CIV. P. 56 BY FAILING TO PRESENT A MOTION FOR THE COURT'S CONSIDERATION**................................................................................................ 13

    **II.    IDEA APPEAL** ............................................................................................... 15

        *A.    The administrative record has been received by the Court as required by 20 U.S.C. § 1415(i)(2)(C)(i)*................................................................................................. *15*

        *B.    Because Defendant failed to request consent of the Court to introduce new evidence, no evidence beyond the administrative record may be considered by the Court with respect to the IDEA appeal* ............................................................................................. *15*

        *C.    The Administrative Law Judge erred in her decision and order as a preponderance of the evidence demonstrated that Defendant failed to comply with IDEA and its implementing law and regulations and failed to develop an IEP for W.F. that enabled him to receive a free and appropriate public education ("FAPE")* ........................................... *17*

    **III.    REMAINING ISSUES** ................................................................................. 25

**CONCLUSION** ...................................................................................................................... **25**

## <u>INTRODUCTION</u>

Defendant has not moved for "judgment" upon the administrative record for the IDEA claims, nor have they moved for "judgment" upon Plaintiff's remaining claims. Rather, Defendants have submitted a brief, to support a motion that was never made, that completely ignores the substantial amount of evidence Plaintiffs have produced as to how and why Defendant denied W.F. a free and appropriate public education (FAPE) and the administrative law judge (ALJ) erred in her due process decision and order. *See* ECF No. 28.

In reviewing Defendant's arguments regarding its denial of FAPE to W.F. and the ALJ's decision, Defendant does not cite to any specific facts or evidence in the record. Rather, Defendant simply takes the ALJ's decision at face value, referencing only the documents cited by the ALJ's decision and Defendant's own "expert's" opinion, to support its position that it provided W.F. FAPE and the ALJ's decision was correct. This is not proper under Federal Rule of Civil Procedure 56. Rule 56 is designed for undisputed matters, not a weighing of evidence by the Court. "To survive summary judgment, Plaintiffs need only rebut, not disprove, [the defendant's] proffered reasons . . ." *A.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 705 (6th Cir. 2013).

Defendant essentially argues that because the ALJ determined Defendant provided W.F. FAPE, it did in fact provide W.F. FAPE. However, this conclusion contradicts a preponderance of the evidence available in the administrative record. (ECF No. 34). As the record demonstrates, year after year, Defendant failed to provide W.F. with FAPE—an educational program individually tailored to his needs that would allow him to make progress appropriate to his circumstances. The failure began long before April 13, 2020, two years from when Plaintiff initially filed her due process complaint, and, sadly, will affect W.F. for the rest of his life. Plaintiff continually advocated with Defendant for W.F. to receive the supports that he needed, but she did not and could not reasonably have known how detrimental Defendant's program was for W.F.

3

Due to Defendant's denial of FAPE from April 2020 to October 2022, when the due process hearing was held, W.F. was unable to access his education, requiring more intensive academic, behavioral, and mental health supports that address his underlying disability-related needs than Defendant provided. The ALJ's decision and order further exacerbated W.F.'s educational difficulties as it failed to correctly apply applicable law to W.F.'s case and erred in finding the District had provided W.F. FAPE for all but one IEP. The compensatory award given by the ALJ then further failed to apply applicable case law and address the substantive harm to W.F., denying him the necessary service and supports to put him in the position he would have been but for the District's denial of FAPE.

Accordingly, Defendants' lack of motion and their Brief in Support for Motion for Summary Judgment should be denied.

## **STATEMENT OF FACTS**

W.F. is a 16-year-old student at Defendant Sturgis Public Schools.  He has been diagnosed with Autism Spectrum Disorder, Disruptive Mood Dysregulation Disorder, ADHD Combined Type, Unspecified Communication Disorder, Mood Disorder Not Otherwise Specified, Anxiety Disorder Not Otherwise Specified, Moderate Psychosocial Stressors, Gastrointestinal Issues, and Hearing Impairment. ECF No. 34-77 at 30. W.F. has also been diagnosed with Tourette's Disorder. ECF No. 34-65 at 56; ECF No. 34-77 at 30. He has received special education services through an Individualized Education Plan (IEP) since 2014, initially under the eligibility category of Speech and Language Impairment, but under the eligibility category of Emotional Impairment (EI) since April 2018.

For the 2020-2021 school year, W.F. attended virtually, due to concerns with COVID-19 and his asthma, but despite this significant change in W.F.'s educational placement, and related to

change in his educational needs, Defendant failed to convene an IEP meeting to review and revise W.F.'s IEP accordingly, claiming it wasn't necessary. ECF No. 34-65 at 61. In January 2021, W.F. completed his NWEA testing and had decreased scores in reading. ECF No. 28-13 at 3. Throughout the 2020-2021 school year, although W.F.'s academic performance marginally improved in the virtual learning format (ECF No. 34-11 at 3; ECF No. 34-66 at 37), in February 2021, N.S. shared with Defendant's staff that W.F. continued to struggle emotionally. ECF No. 34-10. In March 2021, N.S. also shared with Defendant's staff that, while doing better virtually than in-person, W.F. still needed more assistance when not understanding schoolwork. ECF No. 34-11 at 3. Despite this ongoing documented lack of progress and input from N.S., Defendant failed to seek parental consent to conduct any additional evaluations and, in fact, expressly deterred N.S. from any further achievement testing in March 2021, claiming it wasn't necessary. *Id.* at 1.

Additionally, yet *again*, Defendant failed to convene an IEP meeting to review and revise W.F.'s IEP until April 2021. ECF No. 28-13 at 2. Defendant completely removed social-emotional and behavior as areas of needs, despite N.S.'s previous input that emotional regulation specifically was still an area of difficulty, leaving only communication and reading as areas of need. *Id.* at 3-4. Further, despite N.S. indicating that W.F. continued to struggle with articulation and that virtual speech sessions were insufficient to address his needs (ECF No. 34-66 at 35), and despite the District documenting within the Present Level of Academic Achievement and Functional Performance (PLAAFP) section of the IEP that W.F. continued to struggle articulating the same letters since 2018, Defendant failed to develop any communication goals for W.F., nor did Defendant provide any direct speech services to W.F. ECF No. 28-13 at 4-6. Defendant provided W.F. only one goal in reading, removed numerous supplementary aids and accommodations, reduced both W.F.'s speech and social work services to consultation only, and reduced his

alternative special education programming to 0.5-10 hours per week. *Id.* The notice page of W.F.'s IEP provided little to no rationale for these significant reductions in W.F.'s IEP, stating only that W.F. wasn't engaging in the same level of behavioral issues as during in-person learning, he had slow progress and reduced motivation, and that additional testing was unnecessary. *Id.* at 9.

W.F. returned to school in person for the 2021-2022 school year. ECF No. 34-65 at 61. Despite N.S. previously sharing at the April 2021 IEP meeting that an IEP meeting would be needed prior to W.F. returning to school (ECF No. 28-13 at 2; ECF No. 34-11 at 3), and stating that returning to school without appropriate supports would be "catastrophic" for W.F. (ECF No. 34-11 at 3), no IEP meeting was held nor were any IEP amendments made to address W.F.'s known additional needs in an in-person setting. *Id.* Unsurprisingly, within the weeks following W.F.'s return to school in August 2021, W.F.'s special education teacher already had numerous communications with N.S. regarding W.F.'s behaviors and Defendant's staff were already observing W.F.'s need for extra supports. ECF No. 34-15. These behavior concerns continued throughout the first half of the 2021-2022 school year (ECF No. 34-30), with two different manifestation determination review meetings being held for significant behavioral incidents (ECF No. 28-20; ECF No. 28-21). Yet, although Defendant finally revised W.F.'s behavior plan on January 5 and 9, 2022 (ECF No. 34-28; ECF No. 34-29), it made no effort to conduct a functional behavioral assessment (FBA) or any other evaluations to ensure the appropriateness of the behavior plan for W.F. Nor did Defendant convene an IEP meeting until January 20, 2022 to review and revise the IEP in light of W.F.'s continued significant behavioral concerns. ECF No. 28-25 at 2. Notably, during this time, N.S. had specifically requested to amend the IEP and complete an FBA on November 29, 2021, but Defendant failed to appropriately respond to these requests. ECF No. 34-66 at 16-17, 19-20, 27.

Compared to the April 2021 IEP, the January 2022 IEP added transition and reinstated behavior as an area of need, but failed to reinstate socio-emotional, listing reading and speech as the only other two areas of need. ECF No. 28-25 at 3-4. W.F.'s reading goal failed to make any effort to improve his reading performance, instead focusing on W.F.'s "instructional level" without defining what that meant. *Id.* at 6-7. W.F.'s behavioral goal was similarly vague and substantially similar to previous IEP behavior goals, and Defendant failed to provide a communication or transition goal, despite these also being listed as areas of need. *Id.* at 7. Defendant then merely reinstated the majority of W.F.'s supplementary aids and services from the April 2020 IEP, except for providing verbal cues and visual supports. *Id.* at 8-9. Despite W.F.'s ongoing lack of progress, Defendant also failed to make any substantive changes to W.F.'s programs and services, only increasing the maximum alternative special education programming by two hours per week, reinstating direct social work services only for ten to thirty minutes one to four times a month, and making no changes to W.F.'s consult speech and language services. *Id.* at 9-10. Overall, when comparing W.F.'s January 2022 IEP to his April 2019 IEP, W.F. had at best remained at a third to fourth grade reading level, continued to demonstrate significantly disruptive classroom behaviors and accumulate a high number of disciplinary referrals, and continued to demonstrate noticeable communication difficulties related to both articulation and expressive language. *Compare* ECF No. 34-04 at 2 *to* ECF No. 34-33 at 2-4. Yet, despite this clear lack of progress, W.F.'s goals, supplementary aids, and programs and services had remained largely unchanged, failing to target and address W.F.'s specific and severe deficits. *Compare* ECF No. 34-04 at 3-7 *to* ECF No. 34-33 at 5-9. Further, as N.S. later testified during the due process hearing, Defendant repeatedly failed to incorporate and address her parent input regarding W.F.'s specific disabilities and related needs. ECF No. 34-65 at 57, 60; ECF No. 34-66 at 30.

Throughout the remainder of the 2021-2022 school year, W.F. continued to have significant behavioral issues (ECF No. 34-51 at 2-4), yet Defendant failed to initiate an FBA until the end of the 2021-2022 school year. ECF No. 34-67 at 34. W.F. also continued to fail to make any appropriate progress toward his IEP goals. ECF No. 34-32.

Due to these ongoing concerns and Defendant's failure to provide W.F. FAPE, on April 13, 2022, N.S. filed a due process complaint against Defendant with the Michigan Department of Education (MDE). ECF No. 34-01. A due process hearing was held on October 17, 18, and 19, 2022. N.S. retained Dr. David Bateman, a professor at Shippensburg University in the Department of Educational Leadership and Special Education and a former due process hearing officer for Pennsylvania, as an expert in special education. ECF No. 34-38. Dr. Bateman authored or coauthored numerous publications on special education, including *A Principal's Guide to Special Education; A Teacher's Guide to Special Education*; *Charting the Course: Special Education in Charter Schools*; and *Current Trends and Legal Issues in Special Education*. *Id.* Dr. Bateman testified that his overall findings and conclusions were that W.F.'s IEP "was inconsistent…, lacking in detail, [and] needed additional supports and additional provisions for the student…the FBA was not comprehensive." ECF No. 34-65 at 10.

In reviewing each of the IEPs in turn, Dr. Bateman found that none of the IEPs from April 2019 to January 2022 provided W.F. with FAPE. *Id.* at 17. According to Dr. Bateman's testimony, the April 2019 IEP language was too vague, it did not provide a clear baseline of W.F.'s current performance, and the present levels did not match what was being measured by the goals. *Id.* at 13-14. The April 2020 IEP then similarly failed to provide W.F. with FAPE as it did not provide an understanding of his current functioning at that time, the goals were too vague to be effectively measured, and in fact were identical to those in the April 2019 IEP, and there was a lack of

specificity of what services were being provided to him. *Id.* at 14, 16. The April 2021 IEP, although providing marginally better IEP goals, still lacked clarity as to W.F.'s present level and goals, failed to implement any positive behavior intervention supports for W.F., and it lacked understanding of what supports are necessary for him to make progress toward those goals. *Id.* at 16, 17. The January 2022 then also failed to provide W.F. with FAPE as it again failed to provide W.F. positive behavior intervention supports, failed to provide sufficient instruction on how to address behavioral referrals, lacked information regarding W.F.'s current levels of performance, and listed learning goals that were too vague to define and measure progress or whether appropriate instruction is being provided. *Id.* at 10-12.

N.S. also retained Nathan Vanderweele to conduct an independent functional behavior assessment, due to her disagreement with Defendant's completed FBA. ECF No. 34-36. Mr. Vanderweele is a board-certified behavior analyst (BCBA), certified through the Behavior and Analyst Certification Board, and holds a master's degree in behavior analysis, licensed as such through the State of Michigan. ECF No. 34-65 at 31. At the time of the due process hearing, Mr. Vanderweele was a Clinical Supervisor at the Kalamazoo Autism Center, part of Western Michigan University, and had been in that position since 2017. *Id.* In testifying to his independent FBA, Mr. Vanderweele noted he conducted a "modified trial-based functional analysis." *Id.* at 32. Mr. Vanderweele testified that, while a functional analysis is not always a necessary component of an FBA, it was appropriate here given the context and type of W.F.'s behaviors, specifically his verbal outbursts and out-of-seat behaviors within the classroom. *Id.* Mr. Vanderweele testified that he spent two days observing W.F. in school to conduct the FBA, which was sufficient given the high frequency of W.F.'s target behaviors, the verbal outbursts and out of seat behaviors, and that the observation occurred over four different settings. *Id.* at 32, 36, 42. Through his FBA, Mr.

Vanderweele identified the primary functions of W.F.'s behaviors were attention from teachers or peers and escape from demands. *Id.* at 34. Mr. Vanderweele then testified to a variety of recommendations SPS could implement to address those functions and replace the maladaptive behaviors, which he memorialized into a specific behavior plan for W.F. *Id.* at 34-37. In testifying to his behavior plan and what makes a behavior plan effective, Mr. Vanderweele testified consistency in expectations and consequences across all classroom settings is necessary to manage the student's expectations, avoid a potential increase in variability of behaviors, and to promote more predictable outcomes and behaviors by the student. *Id.* at 39-40. Mr. Vanderweele also testified it is essential that the data be consistently collected to ensure the behavior plan is working, and it must be collected in a way that can inform decisions. *Id.* at 32, 50. Based on his review of Defendant's behavior plans to date, Mr. Vanderweele repeatedly testified to the need for data and clear definitions to determine whether the intervention was appropriate for W.F. *Id.* at 47-48.

Defendant failed to present any testimony or evidence to rebut Dr. Bateman's or Mr. Vanderweele's expert testimony. ECF No. 34-67. Rather, the assistant superintendent, Nicole Gittinger, despite serving as Defendant's director of special education, testified that she attended one "behavior-based" meeting for W.F. during the 2021-2022 school year in January 2022 but that she could not recall details of the meeting. *Id.* at 5, 7. W.F.'s assigned special education teacher, Stacey Richardson, testified that she was not a certified special education teacher, but was merely a long-term substitute serving in a special education role. *Id.* at 26, 29. Ms. Richardson further testified that, despite not having completed formal certification or training, she prepared the April 2021 and January 2022 IEPs for W.F. and the FBA she had completed for W.F. was her first one, and she was unfamiliar with MDE's guidance regarding behavior intervention plans and functional behavior assessments. *Id.* at 28, 34.

The ALJ issued a Decision and Order on February 1, 2023, finding that Defendant had only partially denied W.F. FAPE by failing to develop an appropriate IEP at the April 14, 2021 IEP meeting; failing to request parental consent for and conduct comprehensive reevaluations, including a functional behavior assessment, to address W.F.'s lack of progress toward his IEP goals and in the general education curriculum, upon receipt of new information provided by N.S., and to address W.F.'s anticipated academic and behavior needs related to his ongoing conduct; and failing to seek N.S.'s consent to conduct a Functional Behavior Assessment within 10 school days of making the request in writing. ECF No. 34-53 at 72. The only remedy awarded by the ALJ was 65 hours of general compensatory education in the area of reading, within six months, to be provided by Defendant. *Id.* at 73. In finding only a partial denial of FAPE, and providing a significantly limited remedy, the ALJ ignored the significant amount of relevant, reliable evidence and expert testimony provided by Plaintiff and consider and apply relevant case law to the facts of the matter, prompting Plaintiff to appeal the decision and order, as the ALJ's conclusions were not supported by a preponderance of the evidence.

## **STANDARD OF REVIEW**

### I.   **IDEA APPEAL**

The standard of review for IDEA appeals in the Sixth Circuit is "modified de novo." *See Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2005); *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001). Under this standard, this Court is required to conduct an independent review of the entire record, including the administrative record and any additional evidence requested to be heard by a party, and then make an independent decision based on a preponderance of the evidence. *Deal*, 392 F.3d at 849. In reaching its decision, the Court must

also give due weight to the determinations made during the state administrative proceedings. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).

However, reviewing courts must not "simply adopt the state administrative findings without an independent re-examination of the evidence." *Doe ex rel. Doe v. Metro. Nashville Pub. Schs.*, 133 F.3d 384, 387 (6th Cir. 1998).  "The modified de novo standard requires the Court to 'make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings.' " *B.S. v. Rochester Comm. Schs.*, No. 5:06-cv-53 at *9 (W.D. Mich. Oct. 2, 2006), citing *McLaughlin v. Holt Pub. Schs. Bd.*, 320 F.3d 663, 669 (6th Cir. 2003) (quoting *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001)). Further, "[t]he amount of weight due to administrative findings depends on whether the finding is based on educational expertise." *McLaughlin*, 320 F.3d at 669.  "Under the 'due weight' framework, '[l]ess weight is due to an agency's determinations on matters  which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation.'" *Rochester*, No. 5:06-cv-53 at *9 (quoting *McLaughlin*, 320 F.3d at 669).

## II.    REMAINING CLAIMS

Based on a thorough review of Defendant's arguments and cited law, Plaintiff makes no arguments regarding the remaining claims.

## ARGUMENT

### I.    DEFENDANT FAILED TO COMPLY WITH LCivR. 7.1, FED. R. CIV. P. 7, AND FED. R. CIV. P. 56 BY FAILING TO PRESENT A MOTION FOR THE COURT'S CONSIDERATION

Under LCivR 7.1(a), "All motions, except those made orally during a hearing or trial, shall be *accompanied by* a supporting brief." (emphasis added). Fed. R. Civ. Pro. 7(b)(1) unequivocally states:

> A request for a court order *must be made by motion*. The motion must:
> (A) be in writing unless made during a hearing or trial;
> (B) state with particularity the grounds for seeking the order; and
> (C) state the relief sought.

(Emphasis added). Pursuant to Fed. R. Civ. P. 56, "A party *may move* for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." (Emphasis added).

In *Al Qassimi Acad. v. Abuhaltam,* 2023 U.S. Dist. LEXIS 236968, at *4 (W.D. Mich. Jul. 3, 2023), the plaintiff made multiple requests within its brief in a response to a motion filed by defendant, including a request to "strike Defendant's motion . . . for failing to comply with the Federal Rules of Civil Procedure." The Court declined to grant any of the plaintiff's requests, citing Fed. R. Civ. P. 7(b) and finding, "[n]either request is properly before the Court as Plaintiff has embedded the requests for Court action in a response and has not filed any motion." *Id.* at *4. In doing so, the Court cited to other cases within the Sixth Circuit and Western District of Michigan with similar holdings, including *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853-54 (6th Cir. 2006) (affirming denial of requests "buried ... in her responses to the defendants' motions") and *Encana Oil & Gas (USA), Inc. v. Zaremba Family Farms, Inc.*, No. 1:12-cv-369, 2014 U.S. Dist. LEXIS 193513, 2014 WL 1249869, at *1 (W.D. Mich. Mar. 14, 2014) (Scoville, M.J.) ("Every first-year law student should know that a request for a court order must be made by a 'motion.'").

*See Al Qassimi Acad.*, 2023 U.S. Dist. LEXIS at \*4.  Relatedly, in *Gladney v. Gettings*, 2021 U.S. Dist. LEXIS 271650, \*2 (W.D. Mich. Apr. 9, 2021), this Court denied a plaintiff's request for default judgment, embedded within a responsive brief, again citing plaintiff's failure to make the request via a proper motion. As noted by this Court in *Lucas v. JBS Plainwell, Inc.*, 2011 U.S. Dist. LEXIS 128934, \*6-7 (W.D. Mich. Nov. 8, 2011), in similarly denying a plaintiff's request for an Order, "Plaintiff's filing of a supporting brief without an underlying motion was sloppy."

Here, Defendant filed a supporting brief without an underlying motion.  While Defendant titled the brief in support a "motion" with a footnote noting the brief was incorporated (ECF No. 28 at 1 n. 1), at no point in the 44-page brief does Defendant present a motion for the Court's consideration and the basis for that motion. Rather, Defendant simply submitted a brief in support of such a motion, *if* such a motion had been presented. Only in the conclusion does the Defendant "request[] that this Court dismiss this case in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 56." ECF No. 28 at 43. As "[Defendant] has embedded the requests for Court action in a[n accompanying brief] and has not filed any motion," Defendant's request for summary judgment must be denied in its entirety.  *Al Qassimi Acad.*, 2023 U.S. Dist. LEXIS at \*4. Defendant "should know that a request for a court order must be made by a 'motion.'" *Encana Oil & Gas*, 2014 U.S. Dist. LEXIS at \*1.

As Defendant failed to file a motion for summary judgment under LCivR 7.1, Fed. R. Civ. P. 7, and Fed. R. Civ. P. 56, there is no motion for the Court to grant or deny. Defendant's brief in support should be denied and struck in its entirety and the Court should complete a modified *de novo* review of the administrative record and issue a decision based on Plaintiff's Complaint.

## II.    IDEA APPEAL

### A.  The administrative record has been received by the Court as required by 20 U.S.C. § 1415(i)(2)(C)(i)

The IDEA and its implementing regulations place no obligation on an appellant to file the due process administrative record with a court, and this Court issued no orders requiring such.  As Defendant's own Brief acknowledges, the clear language of the IDEA places the obligation on the Court itself: "The district court '(i) shall receive the records of the administrative proceedings…'" ECF No. 28 at 13, citing 20 U.S.C. § 1415(i)(2)(C).  Defendant writes: "Here, Plaintiff has not provided this Court with the records from the administrative proceedings, as required by law. 20 U.S.C. § 1415(i)(2)(C)(i). This Court may not have jurisdiction to entertain Plaintiff's appeal where they [sic] have failed to properly submit the underlying administrative record."  ECF No. 28 at 14.  Again, however, the law as written and as cited by Defendant places no such obligation on Plaintiff.

Nevertheless, on December 13, 2024, Plaintiff filed a copy of the administrative record with this Court. ECF No. 34. Therefore, any argument regarding this Court's receipt of the administrative record is moot, and Defendant's Motion must therefore be denied.

### B.  Because Defendant failed to request consent of the Court to introduce new evidence, no evidence beyond the administrative record may be considered by the Court with respect to the IDEA appeal

Ironically, Defendant itself failed to comply with 20 U.S.C. § 1415(i)(2)(C): "In any action brought under this paragraph, the court— … (ii) shall hear additional evidence *at the request of a party*…."  Although it submitted numerous new pieces of evidence and used many of those pieces of evidence to argue against this Court granting Plaintiff's IDEA appeal, as with its failure to file a motion for summary judgment, it also failed to request that this Court permit it to submit additional evidence.  "The Sixth Circuit has interpreted the statutory phrase 'additional evidence'

broadly, explaining that the term '[a]dditional,' in its ordinary usage, implies something that is added, or something that exists by way of addition. To 'add' means to join and unite; the limitation on what can be joined inherent in the term 'supplement' is not present in the term 'add.'" *Metro. Bd. of Pub. Educ. v. Guest,* 193 F.3d 457, 463 (6th Cir. 1999) (quoting *Metro. Gov't of Nashville and Davidson Cnty. v. Cook,* 915 F.2d 232, 234 (6th Cir. 1990))." *A.A. v. Walled Lake Consol. Schs.*, 2018 U.S. Dist. LEXIS 63449 (E.D. Mich. Apr. 16, 2018).

Fed. R. Civ. P. 7(b) states: "A request for a court order must be made by motion. The motion must: (A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." Defendant has at no time filed a motion to request this Court to consider additional evidence. By failing to file such a motion, Defendant has denied Plaintiff her due process right to respond to such a motion. Therefore, such evidence cannot be considered.

The following exhibits submitted by Defendant constitutes new evidence, as they are not part of the administrative record (*see* exhibits to ECF No. 34):

- Exhibit A, ECF No. 28-2

- Exhibit B, ECF No. 28-3

- Exhibit C, ECF No. 28-4

- Exhibit D, ECF No. 28-5

- Exhibit E-1, ECF No. 28-6

- Exhibit E-2, ECF No. 28-7

- Exhibit E-3, ECF No. 28-8

- Exhibit K, ECF No. 28-14

- Exhibit N, ECF No. 28-17

- Exhibit O, ECF No. 28-18

- Exhibit P, ECF No. 28-19

- Exhibit S, ECF No. 28-22

- Exhibit X, ECF No. 28-27

- Exhibit Z, ECF No. 28-29

- Exhibit AA, ECF No. 28-30

- Exhibit BB, ECF No. 28-31

- Exhibit CC, ECF No. 28-32

Because Defendant failed to comply with 20 U.S.C. § 1415(i)(2)(C), this Court may not consider any of the above exhibits in its determination of the IDEA appeal.  Alternately, this Court may allow Defendant to file a motion to allow it to consider additional evidence and allow Plaintiff to respond to such a motion in accordance with LCivR 7.3(c).  Should this Court allow such a motion, it should also permit Plaintiff to commensurately file a motion to request that the Court consider additional evidence in support of this Brief.

**C.  The Administrative Law Judge erred in her decision and order as a preponderance of the evidence demonstrated that Defendant failed to comply with IDEA and its implementing law and regulations and failed to develop an IEP for W.F. that enabled him to receive a free and appropriate public education ("FAPE")**

Defendant wrongly argues that Plaintiff failed to identify any evidence the ALJ failed to consider or any specific errors in her interpretation of law and are instead asking this Court to substitute its judgment for that of the ALJ. This argument is simply wrong as evidenced by the Complaint itself, which details at length the many specific errors in the ALJ's interpretation of law.  ECF No. 1, ¶¶ 194-248. As outlined in the Complaint, the ALJ failed to appropriately

consider the evidence presented at the due process hearing and failed to identify and apply the applicable legal standards regarding Defendant's responsibility to provide W.F. with FAPE. *Id.*

Defendant is correct in stating that "district courts must apply a 'modified de novo' standard of review in IDEA appeals." ECF No. 28 at 25 (citing *Doe v. Bd. of Ed. of Tullahoma City Sch.*, 9 F.3d 455, 458 (6th Cir. 1993)). Defendant is also correct in noting that such administrative decisions should be given "due weight" and that "the amount of weight due to administrative findings depends on whether the finding is based on educational expertise." *Id.* (citing *Deal*, 392 F.3d at 849). However, therein lies the crux of the issue—the ALJ's decision was *not* based on any educational expertise as it failed to cite and apply the appropriate law related to Defendant's responsibility to provide W.F. with FAPE and ignored relevant evidence to erroneously conclude that Defendant had complied with IDEA. *See* ECF No. 34-53 at 48-72. "A court should defer to the administrative findings only when 'educational expertise' is relevant to those findings and the decision is reasonable." *Burilovich v. Bd. of Educ.,* 208 F.3d 560, 567 (6th Cir. 2000). By so deferring, 'due weight' will have been given to the state administrative proceedings." *Bloomfield Hills Sch. Dist. v. Doe*, No. 2:02-cv-70414 at *8 (E.D. Mich. Oct. 7, 2002).

"Even if the district court in the present case had afforded a higher level of deference to the ALJ, it still would have had to apply the modified de novo standard, independently reexamining the evidence for itself. It would not have been able to 'simply adopt the state administrative findings without an independent re-examination of the evidence.'" *Somberg v. Utica Cmty. Schs*, 908 F.3d 162, 173 (6th Cir. 2018) (citing *Metro. Nashville Pub. Schs.*, 133 F.3d at 387). In *L.H. v. Hamilton Cty. Dep't of Educ.*, 900 F.3d 779 (6th Cir. 2018), the Sixth Circuit noted, "[T]he district court was correct that the State ALJ . . . used the wrong standard, *the court was also correct*

*in rejecting the State ALJ's findings under that standard.*" 900 F.3d at 793 (emphasis added). As such, the ALJ's decision is not due any weight and a modified *de novo* review of the record will result in this Court reversing the ALJ's decision and finding that Defendant denied W.F. FAPE.

In 2017, the Supreme Court expanded on its previous decision regarding the definition of FAPE under IDEA to hold that an IEP must not only provide "a substantially adequate program of education to all eligible children," (*Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 392 (2017) (citing *Rowley*, 458 U.S. at 200-202), but that educational program must also "be *appropriately ambitious in light of his circumstances*, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom." *Id.* at 402. (emphasis added). Further, "[a] reviewing court may fairly expect [school] authorities to be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances." *Id.* at 404. In establishing this heightened standard of FAPE, the Supreme Court specifically held, "a student offered an educational program providing 'merely more than de minimis' progress from year to year can hardly be said to have been offered an education at all. For children with disabilities, receiving instruction that aims so low would be tantamount to 'sitting idly . . . awaiting the time when they were old enough to drop out.'" *Id.* at 400 (citing *Rowley*, 458 US at 179). The analysis of whether an IEP is appropriate, "*turns on the unique circumstances of the child for whom it was created*." *Id.* (emphasis).

Despite the robust language in *Endrew F.* regarding the appropriate, heightened standard of FAPE, the ALJ gave this case no more than a single sentence in her statement of applicable regulations and case law. ECF No. 34-53 at 10. Instead, the ALJ primarily cited to the older, outdated *Rowley* standard that the IEP must confer an educational benefit. *Id.* In defining

educational benefit, the ALJ then similarly relied on older sixth circuit cases to note the benefit must be "meaningful . . . in relation to the potential of the child at issue," (*Id.* (citing *Deal*, 392 F.3d at 862)) but does not need to "maximize a student's potential or provide the best possible education at public expense." *Id.* This meaningful benefit standard is no longer appropriate or applicable following the Supreme Court's decision in *Endrew F.* Although the ALJ went on to cite additional language from *Endrew F.* under her conclusions of law (*Id.* at 50), she still failed to apply these robust standards to the facts of W.F.'s case, ignoring the plethora of evidence presented by Plaintiffs that the District had, in fact, provided W.F. nothing more than de minimis progress. *Id.* at 5.

During the hearing, Dr. Bateman testified that "the most important part of a child's IEP is the present level statement because that dictates the services, that dictates the needs, that dictates the level of instruction that's provided. If you have an incomplete present level statement, then…you can't then effectively make a determination yay or nay about what you're providing for the student." ECF No. 34-65 at 9. In reviewing W.F.'s PLAAFP statements in his IEPs from 2020-2022, Dr. Bateman unequivocally expressed the PLAAFPs were not written in a way to provide W.F. FAPE, "[b]ecause they were vague, they didn't clarify precisely the individual needs that he has as it relates to the general population, so therefore I couldn't understand where to go with them and 9 what to provide." *Id.* at 10, 16, 17; ECF No. 34-38 at 17. Throughout the IEPs, there was no updating of information related to W.F.'s present level of performance, no indication he was making any progress toward his IEP goals or the general curriculum, and no indication of how W.F. was performing. *See* ECF No. 34-65 at 11, 13, 14-17.

W.F.'s IEP goals were then consistently drafted haphazardly, with no specificity, coherency, or consistency. ECF No. 34-04 at 3-4; ECF No. 34-08 at 3-5; ECF No. 34-13 at 3-4;

ECF No. 34-33 at 5-6.  W.F.'s reading goals for 2019 and 2020 were more focused on behaviors than reading skills. ECF No. 34-04 at 3; ECF No. 34-08 at 4. The 2021 and 2022 reading goals, while specific to 11 reading skills, failed to provide specificity as to W.F.'s current performance and needs for instruction as related to the skills to be measured by the goals. ECF No. 34-13 at 4; ECF No. 34-33 at 6; ECF No. 34-65 at 10, 17. W.F.'s behavior goals were similarly vague and immeasurable, making it impossible to provide W.F. appropriate supports and measure his progress over the course of the IEP. ECF No. 34-65 at 11, 14-15. Respondent completely removed a behavior and socioemotional goals in 2021, claiming it was no longer an area of need (ECF No. 34-13 at 3-4), despite testimony by W.F.'s special education teacher indicating W.F. hadn't been logging into his online classes consistently. ECF No. 34-67 at 10-11. W.F.'s communication goals was copied and pasted into his 2020 IEP, but then discontinued in 2021 because W.F. was attending Respondent remotely. *Compare* ECF No. 34-04 at 4 *to* ECF No. 34-08 at 4 *to* ECF No. 34-13 at 7. Petitioner declined virtual speech therapy because, considering W.F.'s significant behavior and academic deficits, it was no longer a primary area of concern for her and W.F. failed to attend or benefit from it, not because W.F. had made any progress toward his communication goal or because communication was no longer an area of need. ECF No. 34-66 at 35, 38. In fact, W.F.'s 2021 IEP noted communication was still an area of need and his progress had stalled, stating, "Although [W.F.] is successful at the sound and word level with his target sounds, he struggles with sentences, reading, and other less structured activities. As the activity becomes more complex and/or less structured, his accuracy tends to decrease . . . [W.F.] does not always demonstrate awareness of his errors during sessions, which reduces his self correcting skills. His progress has appeared to slow down over the past year," (ECF No. 28-13 at 3), and this continued to be a concern as recent as W.F.'s 2022 IEP. ECF No. 28-25 at 4. Overall, W.F.'s goals failed to

be appropriately ambitious, yet the ALJ ignored all of this evidence and failed to even conduct a specific analysis as to whether or not the goals were appropriately ambitious and why within her decision and order. ECF No. 34-53.

Plaintiffs also presented ample evidence regarding the insufficiency of W.F.'s IEP supplementary aids and services, particularly in light of W.F.'s lack of progress, which similarly went ignored by the ALJ in her decision and order. For example, the January 2022 IEP provided W.F. with "frequent breaks," but gave no explanation of how "frequent" was defined. ECF No. 34-65 at 12. The supplementary aids and services often seemed to be pulled out of thin air because they "seemed" appropriate, without any indication of whether or how they addressed one of W.F.'s needs or inadvertently operated as a trigger for additional behaviors. *Id.* at 47-48. Similarly, the programs and services provided wide ranges of times, but lacked any explanation of what W.F. was going to be receiving during these times and what needs were being addressed. *Id.* at 12. Further, many of the supplementary aids placed the burden on W.F. to initiate them (ECF No. 34-04 at 4-6; ECF No. 34-08 at 6-8; ECF No. 34-13 at 4-5; ECF No. 34-33 at 7-8), despite W.F. being a student with a disability and Defendant, as the LEA, being the ones responsible to provide W.F. with FAPE. *See* ECF No. 34-65 at 12, 17.

Defendant also failed to make any substantive or notable changes to clarify and modify the supplementary aids and services at the annual IEPs, despite W.F.'s lack of identified progress toward previous IEP goals and his ongoing academic and behavior deficits and needs. *Id.* at 15, 17. When W.F.'s IEP team met for the April 2019 IEP, when W.F. was in fifth grade, W.F. was performing at a third or fourth grade reading level, had 29 disciplinary referrals to date, and struggled significantly with inappropriate language and disruptive behaviors in the classroom. W.F. also struggled with articulating different sounds within his conversational speech. ECF No.

34-04 at 2. The following year, in 2020, W.F. continued to perform below grade level in reading, scoring in the low 200's on subtests of the NWEA, and had shown an increase in his inappropriate language and disruptive behaviors. ECF No. 34-08 at 2-3. As of April 2020, W.F. had been given 37 disciplinary referrals for the year. *Id.* at 2. In 2021, although Respondent removed behaviors as an area of need 20 solely due to W.F.'s participation in remote learning for the preceding year, Mrs. Richardson noted that W.F. continued to struggle with work completion and attendance (ECF No. 34-67 at 10-11), and W.F.'s 2021 IEP showed he had regressed in his already below-grade level reading performance. *Compare* ECF No. 34-08 at 2 *to* ECF No. 34-13 at 2. When W.F.'s IEP was reviewed in January 2022, his reading performance had regressed even further, with W.F. performing "at a mid-third grade reading level," and after returning to in-person learning in September 2021, W.F. had earned twenty-eight disciplinary referrals in less than 4 months. ECF No. 34-33 at 2. Following his January IEP, W.F. continued to have significant behavior issues and disciplinary removals. ECF No. 34-51 at 2-5; ECF No. 34-60 at 6-10.

When Defendant did revise the Programs and Services, they did so only by increasing the already broad range of frequency and duration but failed to give any clarity or explanation as to whether the services and interventions themselves were being revised in response to W.F.s needs or what needs were being addressed during this increased time. ECF No. 34-65 at 15-16, 17. Like the PLAAFP and the goals, both the Supplementary Aids and Services and the Programs and Services sections of the IEP continued to be vague and haphazard, often using boilerplate language with no connection to W.F.'s individual needs and circumstances from 2020 to 2022. *Id.* at 18.

Despite the substantial amount of evidence presented regarding W.F.'s lack of progress and Defendant's failure to provide supports and services reasonably calculated to provide W.F. with FAPE, particularly in light of this lack of progress, the ALJ failed to consider this evidence

as presented above.  This is analogous to a similar situation in *Sharbowski v. Utica Community Schools* in which the U.S. District Court for the Eastern District of Michigan found that an ALJ had erred in failing to consider certain evidence presented by a petitioner at a due process hearing. No. 2:14-cv-10216 at *23, 25 (E.D. Mich. Jan. 20, 2017).

The ALJ also failed to conduct any analysis under *Endrew F.* as to the reasonableness of the IEPs to provide W.F. with FAPE, in light of the lack of progress and lack of updated data and information. Instead, the ALJ repeatedly mischaracterized and misstated Plaintiff's arguments, evidence, and testimony by cherry-picking supports that were listed within the IEPs and blaming W.F. for not utilizing them. ECF No. 34-53 at 48-71. For example, the ALJ wrote, "Petitioner asserts that Student's April 2020 IEP was not appropriate to meet Student's needs because Student was not able to record answers to assignments, track time with a timer, have a cooling off space, extra time without marking Student down, or to get frequent positive feedback, visual supports, sensory strategies, and verbal cues." *Id.* at 51. However, this ignores all of Plaintiff's evidence that the April 2020 IEP was inappropriate because the IEP failed to include an appropriate PLAAFP statement, measurable goal, or reasonable services and supports. As another example, the ALJ claimed "Respondent cannot be held accountable for Student's refusal to participate in the social work services that were being offered by Respondent," without citing to any case law or regulation supporting this claim, or otherwise providing any analysis as to whether Defendant offered any other reasonable supports or services to address W.F.'s documented social-emotional needs. *Id.* at 53. The burden is not on Plaintiff to provide W.F. with FAPE, but for the District to do so. The ALJ also egregiously claimed "Petitioner did not present any evidence to establish that the January 2022 IEP was not reasonably calculated for Student to make appropriate progress on the reading goals," which directly ignored evidence, presented by Plaintiff, that the W.F.'s reading goals were

inappropriate and had, along with W.F.'s supports and services, largely stayed the same since April 2020 despite W.F.'s lack of progress. *Id.* at 55. Throughout the conclusions of law, the ALJ relied on her own assumptions and opinions versus applying any legal standards to the facts and evidence of the matter. ECF No. 34-53 at 48-71.

For the foregoing reasons, the ALJ erred in her interpretation and application of the law, failed to fully and appropriately consider the evidence, and failed to base her decision on a preponderance of the evidence, and Defendant's Motion must be denied.

## III.    REMAINING ISSUES

Based on a thorough review of Defendant's arguments and cited law, Plaintiff makes no arguments regarding the remaining claims.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment with respect to the IDEA claim should be denied.

Dated: December 13, 2024          Respectfully submitted,

*/s/ Elizabeth Abdnour*
Elizabeth K. Abdnour (P78203)
Jacquelyn Kmetz (P83575)
Renee A. Stromski (0101347)
ABDNOUR WEIKER LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
P: (517) 994-1776
F: (614) 417-5081
liz@education-rights.com
jacquelyn@education-rights.com
renee@awlawohio.com

*Attorneys for Plaintiff*

25

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the limits set forth in LCivR 7.2(b)(i). Further, based on the Word Count function of Microsoft Word for Mac word processing software, applied to include all include headings, footnotes, citations and quotations, but not to include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, I certify that this Brief contains 7302 words.

*/s/ Elizabeth Abdnour*
Elizabeth K. Abdnour (P78203)
ABDNOUR WEIKER LLP

## PROOF OF SERVICE

I hereby certify that on December 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties.

Dated: December 13, 2024        */s/ Elizabeth Abdnour*
Elizabeth K. Abdnour (P78203)
ABDNOUR WEIKER LLP