UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

N.S. ON BEHALF OF W.F.,  )
    Plaintiffs,  )
)  No. 1:23-cv-448
v.  )
)  Honorable Paul L. Maloney
STURGIS PUBLIC SCHOOLS,  )
    Defendant.  )
)

## OPINION AND ORDER RESOLVING MOTION FOR SUMMARY JUDGMENT

This matter comes before the court on Defendant Sturgis Public School's motion for summary judgment. (ECF No. 28). Plaintiffs filed a response in opposition. (ECF No. 37). Defendant filed a reply brief. (ECF No. 41). The court will grant the motion.

### I.

Plaintiff N.S. brought this action on behalf of her son, W.F. against Defendant Sturgis Public Schools. Plaintiffs appeal the final administrative decision dismissing W.F.'s state due process complaint under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiffs also allege that Defendant violated W.F.'s rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; the Michigan Persons with Disabilities Civil Rights Act ("PDWCRA"), M.C.L. 37.1101 *et seq.*; and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. 37.2101 *et seq.*

1

W.F. attends Sturgis Public Schools as a high schooler, and he has been eligible for special education services since 2014.[1] W.F. was diagnosed with "Autism Spectrum Disorder, Disruptive Mood Dysregulation Disorder, Attention-Deficit/Hyperactivity Disorder – Combined Type ("ADHD"), Unspecified Communication Disorder, Mood Disorder Not Otherwise Specified, Anxiety Disorder Not Otherwise Specified, Moderate Psychosocial Stressors, Gastrointestinal Issues, and Hearing Impairment." (ECF No. 1 at PageID.2). Plaintiffs assert that Defendant did not provide W.F. with an appropriate education.

## II.

Courts grant summary judgment only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden rests on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out an absence of evidence supporting the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[1] For a more thorough review of the facts, see the complaint and administrative record. (ECF Nos. 1, 34). Details concerning Plaintiffs are filed under seal. This court is mindful of their privacy, primarily because W.F. is a minor.

## III.

The court has conducted a review of the parties' filings and the administrative record. Plaintiffs waived the majority of their claims but sought review of the ALJ's IDEA rulings. The record reflects no disagreement on material facts and that Defendant is entitled to summary judgment. The ALJ applied the correct standards, fully and appropriately considered all the evidence, and exercised thoughtful expertise over this matter.

A. Waived Claims

Before turning to the merits, the court will address some issues raised in Plaintiff's brief in response to Defendant's motion for summary judgment. First, Plaintiffs argue that the court should strike or deny in its entirety Defendant's motion for summary judgment because it did not comply with some local rules. (ECF No. 37 at PageID.1924-26). The court will reject these arguments for the same reason it denied Plaintiffs' motion to strike Defendant's motion for summary judgment. (ECF No. 38). Plaintiffs were unable to show prejudice because Defendant did not file a procedurally perfect motion for summary judgment. (*Id.*).

Second, Defendant moved for summary judgment on all of Plaintiff's claims. (ECF No. 28). In response, Plaintiffs responded to the IDEA claim appeal only. Plaintiffs state that "[b]ased on a thorough review of Defendant's arguments and cited law, Plaintiffs make no arguments regarding the remaining claims." (ECF No. 37 at PageID.1936). Plaintiffs therefore expressly waived their claims brought under Section 504, Title II, PWDCRA, Title VI, and ELCRA. *See Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013); *KSA Enters., Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456,

463 (6th Cir. 2019); *Vance v. United States*, No. 3:12-CR-77-TWP-HBG-1, 2017 WL 1435731, at *2 (E.D. Tenn. Apr. 21, 2017). Defendant is therefore entitled to summary judgment on all of Plaintiff's waived claims.

    B.  IDEA Claim

The Individuals with Disabilities Education Act provides states with funding for special education in return for their guarantee to provide disabled students a free and appropriate public education. 20 U.S.C. § 1412(a)(1). A free appropriate public education ("FAPE") includes tailored instruction for qualifying students. *Id.* The IDEA requires schools to work with parents to prepare an "individualized educational program" ("IEP"). *Id.* § 1414.

In 1982, the Supreme Court held that states provide FAPE when they offer personalized instruction for students with disabilities, resulting in a guarantee of a substantively adequate education. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176 (1982). The Court rejected the view that the IDEA gives "courts *carte blanche* to impose upon the States whatever burden their various judgments indicate should be imposed," however. *Id.* at 190. Generally, a child's IEP must set out an educational program that is "reasonably calculated to enable the child to receive educational benefits." *Id.* at 207. An IEP would be "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* at 204. *Rowley* created an educational "floor" under the IDEA. *Doe By & Through Doe v. Bd. of Educ. of Tullahoma City Sch.*, 9 F.3d 455, 457 (6th Cir. 1993).

After a review of *Rowley* in 2017, the Court modified the prior rule. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* IEPs must be "reasonable," not "ideal," and aim to "enable the child to make progress." *Id.* In vacating the Tenth Circuit's finding of FAPE for an autistic student whose IEP provided only *de minimis* educational benefit, the Court made clear that the "IDEA demands more." *Id.* at 403.

The Court did not articulate what "appropriate" meant for every student because it necessarily depends on the "unique circumstances of the child." *Id.* at 403. Courts cannot "'substitute their own notions of sound educational policy for those of the school authorities which they review.'" *Id.* at 404 (quoting *Rowley,* 458 U.S. at 206). Courts owe deference on the application of expertise by school authorities, but school officials must "be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances." *Id.* at 404.

1. IDEA Standard of Review

Courts apply a modified *de novo* review of an ALJ's finding on FAPE. *Doe By & Through Doe,* 9 F.3d at 458. We must also give "due weight" to the state administrative proceedings in reaching a decision. *Id.* "Federal courts are 'generalists with no expertise in the educational needs of handicapped students.'" *Metro. Bd. of Pub. Educ. v. Guest,* 193 F.3d 457, 464 (6th Cir. 1999) (quoting *Crocker v. Tennessee Secondary Sch. Athletic Ass'n.,*

5

873 F.2d 933, 935 (6th Cir. 1989)). When educational expertise is relevant to an ALJ's finding, the reviewing court affords the finding more weight. *McLaughlin v. Holt Pub. Schs. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003). Movants must show by a preponderance of the evidence that they were not provided with the IDEA's guarantees of FAPE.

2. Administrative Record Disputes

Defendant argued that the court could lack jurisdiction over Plaintiffs' IDEA claim because Plaintiffs failed to put the administrative proceedings on the record. (ECF No. 28 at PageID.448). In response, Plaintiffs assert that the obligation to produce the administrative records falls "on the Court itself," and there is "no such obligation on Plaintiff." (ECF No. 37 at PageID.1926) (citing 20 U.S.C. § 1415(i)(2)(C)). The district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." § 1415(i)(2)(C). Plaintiff's reading of the statute is unfounded. This court is not responsible for supplementing the record on behalf of litigants. And the text only says that the court "shall receive," not "retrieve," "find," "summon," or "subpoena." Despite asserting that it was the court's duty to produce Plaintiffs' administrative records, Plaintiffs filed the administrative record anyway. (ECF No. 34). So this issue is moot.

6

Plaintiffs raised a similar issue in their response. In their view, Defendant violated their due process rights when they relied on records outside the administrative proceedings at summary judgment. (ECF No. 37 at PageID.1926). Plaintiffs rely on the language of § 1415(i)(2)(C)—"the district court . . . (ii) shall hear additional evidence at the request of a party." *Metro. Bd. of Pub. Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999) (explaining that the court's review is limited to the evidence before the ALJ); *but see Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 850–51 (6th Cir. 2004) ("There is no evidence, for example, that the district court used the additional evidence to go beyond the scope of the matters before the ALJ; indeed, the district court took great care to limit testimony to matters relevant to [the IEP before the ALJ]."); *Somberg on behalf of Somberg v. Utica Cmty. Sch.*, 908 F.3d 162, 174 (6th Cir. 2018) ("The court may consider evidence outside of the administrative record and issues that were not presented to the ALJ if they are relevant to the issues that were before the ALJ.").

The court will limit its analysis to the administrative record. It appears that most of Defendant's other cited materials involve W.F.'s behavioral issues, which are not entirely salient. Even so, it is odd that Plaintiffs would claim a due process violation regarding matters produced through discovery in this case; it seems that Plaintiffs would have been aware of this evidence, considering they produced it or were themselves deposed.

3. Exhaustion

Defendant also asserts that the court's review is limited to those IDEA issues which were properly exhausted. It is correct. Federal law sets a 2-year time limit on challenging IEPs. 34 C.F.R. 300.507(a)(2). Plaintiffs filed their due process complaint on April 13, 2022, limiting the IDEA appeal to April 13, 2020, through April 13, 2022. Plaintiffs do not address this point in their briefs, but their request for a special education due process hearing acknowledges the two-year limitation. (ECF No. 34-1 at PageID.766). Plaintiffs' complaint implicitly acknowledges the limitation as well. (ECF No. 1 at PageID.51-58). Nonetheless, it was helpful to the ALJ and this court alike to consider the entire scope of a student's educational history if only for purposes of context and background.

4. Review of the ALJ's Decision

Courts review IDEA claims under a two-step framework. First, the court reviews whether the school complied with the procedures set forth in the IDEA. Second, the court must determine whether the IEP was reasonably calculated to enable the child to receive educational benefits. *See Rowley*, 458 U.S. at 206-07; *Endrew F.*, 580 U.S. at 399. "To be reasonably calculated to enable the student to receive educational benefits, the IEP must include, among other things," a statement of measurable annual goals, a description of how the child's progress toward meeting the annual goals will be measured, and appropriate measurable goals based upon age and ability. *Somberg*, 908 F.3d at 170 (citing 20 U.S.C. § 1414(d)(1)(A)).

Under their IDEA claim, Plaintiffs' complaint alleges that the Defendant erred in several ways: (1) Defendant failed to develop an IEP reasonably calculated to allow W.F. to make appropriate progress at the April 2020 and January 2022 IEP meetings (ECF No. 1 at PageID.51);[2] (2) Defendant failed to implement positive behavior intervention to support W.F.'s specific behavioral needs (*Id.* at PageID.55);[3] (3) Defendant failed to provide W.F. extended school year services from two years of the date of filing (*Id.* at PageID.57);[4] and (4) Defendant failed to consider all relevant information in finding that W.F.'s behavior was not a manifestation of his disability (*Id.* at PageID.58).[5] The ALJ found that Defendant had previously met its burdens under the IDEA on these issues. (ECF No. 28-26 at PageID.665-66).

Defendant moved for summary judgment on these issues for the same reasons the ALJ relied on when rejecting these claims after the administrative hearing. Defendant posits that W.F. was provided with FAPE. It credits the ALJ's findings, which were extensive and span over seventy pages. In response, Plaintiffs point to their complaint and outline how the ALJ failed to appropriately consider the evidence presented. Plaintiffs contend that the ALJ did not apply the proper standard, so its findings are entitled no deference. Plaintiffs also rely heavily on testimony from their expert, Dr. Batemen. Plaintiffs contend that the ALJ should have credited his testimony more.

---

[2] This is identified as the first issue in the ALJ's decision. (ECF No. 28-26 at PageID.600).
[3] This is identified as the fourth issue in the ALJ's decision. (ECF No. 28-26 at PageID.600).
[4] This is identified as the fifth issue in the ALJ's decision. (ECF No. 28-26 at PageID.601).
[5] This is identified as the seventh issue in the ALJ's decision. (ECF No. 28-26 at PageID.601).

"Having conducted an independent review of the administrative record and giving due weight to the ALJ's decision, the Court finds that the challenged findings are supported by a preponderance of the evidence." *G.D. obo G.D. v. Utica Cmty. Sch.*, No. 20-12864, 2023 WL 2719426, at *6 (E.D. Mich. Mar. 30, 2023).

The ALJ applied the correct standard. The ALJ recited the proper burden of proof and the relevant federal and state regulations. (ECF No. 28-26 at PageID.601-03). It also cited *Rowley* and *Endrew F.* (*Id.* at PageID.603). The ALJ even quoted the proper standard: "In *Endrew F.*, the U.S. Supreme Court stated that for a school district 'to meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.'" (*Id.*) (cleaned up); *see also* (*Id.* at PageID.643) (similar). The ALJ also provided Plaintiffs with a full and fair opportunity to raise these issues, and the ALJ issued a detailed opinion. *But cf.*, *T.S. v. Utica Cmty. Sch.*, No. 14-10216, 2017 WL 242842, at *12 (E.D. Mich. Jan. 20, 2017) (remanding a case for further proceedings after an ALJ excluded over half of plaintiff's exhibits, failed to discuss his reasoning, and denied a rescheduled hearing date).

Next, the ALJ recited approximately a decade of W.F.'s special education and related services history. (*Id.* at PageID.609-42). The ALJ discussed W.F.'s background, his diagnoses, and his school years from fifth grade through eighth grade. (*Id.* at PageID.609-32). The ALJ also discussed W.F.'s 2022 Psychological Evaluation and Independent FBA. (*Id.* at PageID.632-37). The ALJ then devoted several pages of findings to Plaintiffs' expert, Dr. Batemen, which included dozens of citations to testimony at the hearing. (*Id.* at PageID.637-42). Dr. Batemen concluded that W.F.'s education was inappropriate and not

reasonably calculated to permit W.F. to progress. The ALJ then listed its conclusions of law. (*Id.* at PageID.642-66). The ALJ rendered a mixed decision and awarded W.F. 65 hours of compensatory education in ELA/reading. (*Id.* at PageID.664).

Plaintiffs ask this court to set aside the ALJ's determination on W.F.'s FAPE. But as discussed, the ALJ engaged in a lengthy review of W.F.'s educational record and applied the appropriate standard. Plaintiffs ask the court to reweigh the evidence for itself. Plaintiffs rely on Dr. Bateman's testimony regarding the alleged deficiencies in W.F.'s IEP. (ECF No. 37 at PageID.1931-33). But reweighing Dr. Bateman's testimony along with the rest of the administrative record presents two problems: this court cannot make credibility determinations at summary judgment, and the ALJ's findings are entitled to due weight so long as they implicate educational expertise.

Dr. Bateman's testimony undoubtedly implicated educational expertise. Dr. Bateman opined on what constituted the most important part of an IEP—the "present level statement." (ECF No. 34-65 at PageID.1520). He explained that W.F.'s IEP was not regularly updated, and it provided no indication that he was progressing toward his IEP goals. (*Id.* at PageID.1521-27). Discerning the most important part of an IEP and whether an IEP was properly updated implicates educational expertise. And the ALJ considered Dr. Bateman's testimony when she considered whether Defendant failed to develop a reasonably calculated IEP. (ECF No. 28-26 at PageID.643-44, 648). Plaintiffs cannot assert that the ALJ ignored Dr. Bateman's testimony.

Plaintiffs also point to the IEP documents themselves. (ECF Nos. 34-4, 34-8, 34-13, 34-44). They insist that the IEP documents are poorly drafted and unspecific. Again, an ALJ

11

with educational expertise is better situated to review the quality of IEP documentation. And the ALJ did just that. (ECF No. 28-26 at PageID.644-48). The court will decline to conduct an entirely de novo review of the Plaintiffs' IDEA related concerns.

Plaintiffs' case resembles *Barney v. Akron Board of Education*, 763 F. App'x 528, 532 (6th Cir. 2019). There, the Sixth Circuit rejected a plaintiff's assertion that the school district deprived her of a sufficiently ambitious IEP. *Id.* at 533. The court explained that contrary to plaintiff's assertion, "the program contained goals tailored to [the student's] weaknesses in five categories: speech, fine motor skills, reading, writing, and math." *Id.* Here, W.F.'s administrative records indicate the same. (ECF Nos. 34-4, 34-8, 34-13, 34-44). Where it did not, the ALJ concluded that Defendant failed to provide W.F. with proper progress as it related to his reading goals. (ECF No. 28-26 at PageID.649). Moreover, the ALJ found for Plaintiffs on several issues not raised here. (*Id.* at PageID.665).

## IV.

The court has conducted a review of this matter. Plaintiffs waived most of their claims, and they failed to establish how W.F. was denied FAPE under the IDEA. The court will grant summary judgment to Defendant. This case is dismissed.

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (ECF No. 28) is **GRANTED**.

Judgment to follow.

**IT IS SO ORDERED.**

Date: May 12, 2025                           /s/ Paul L. Maloney
                                                                                                Paul L. Maloney
                                                                                                 United States District Judge